THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: December 9, 2011



_____
Honorable Pamela Pepper
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| IN RE:    GLENDA CARTER | Case No. 10-40262-pp |
|            Debtor. | Chapter 7 |

---

| | |
|---|---|
| WELLS FARGO BANK, N.A., | Adv. No. 11-2240-pp |
|            Plaintiff, | |
| v. | |
| GLENDA CARTER, | |
|            Defendant. | |

---

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DISMISSING COMPLAINT**

---

A.    <u>Factual Background</u>

On April 4, 2011, the plaintiff filed an adversary complaint, requesting that the Court determine that the defendant's debt to the plaintiff was nondischargeable under 11 U.S.C. §§ 523(a)(2). The complaint asserted that

1

the plaintiff had granted the defendant an extension of consumer credit under an "open end" credit plan in the form of a credit card. The complaint further asserted that, prior to filing her bankruptcy, the defendant had incurred twelve charges on her credit card totaling $7,922.28, and had obtained a cash advance in the amount of $123.50, plus fees of $10.00. According to the complaint (and the credit card account statement attached to the complaint), the twelve charges that the defendant made were as follows: (1) a charge on November 8, 2010 for $140.49 to AT&T; (2) a charge on November 5, 2010 for $507.76 to Wal-Mart; (3) a charge on November 4, 2010 for $30.62 to The Dollar Tree; (4) a charge on November 3, 2010 for $239.71 to Wal-Mart; (5) a charge on November 2, 2010 for $205.38 to Sprint; (6) a charge on October 30, 2010 for $1,055.99 to Ashley Homestore; (7) a charge on October 29, 2010 for $1,620.91 to Jack L. Marcus, Inc.; (8) a charge on October 28, 2010 for $271.09 to Wal-Mart; (9) a charge on October 19, 2010 for $235.50 to Dental Associates; (10) a charge on October 15, 2010 for $715.33 to Wal-Mart; (11) a charge on October 14, 2010 for $2,841.47 to Jack L. Marcus, Inc.; and (12) a charge on October 13, 2010 for $58.03 to Boston Store. The plaintiff asserted that none of the credit card charges were "reasonably necessary for the maintenance or support of [the defendant or any of her dependants]." (Pl. Compl. ¶ 8-19).

The plaintiff's brief in support of its default judgment motion cited § 523(a)(2)(C)(i)(I), and the plaintiff alleged that the nature of the credit card

transactions established a presumption of nondischargeability. The complaint further alleged that when the defendant made her purchases, she "necessarily or concomitantly manifested either an actual or implied representation to repay the extension of credit." (Pl. Compl. ¶ 11) (citations omitted). The plaintiff asserted that the defendant knew that she did not have the ability to repay the debts because her schedules showed that she had a net monthly income of only $7.00. Accordingly, the complaint alleged that the defendant's conduct supported a finding that the $7,922.28 of credit card debt was nondischargeable under § 523(a)(2).[1]

On June 13, 2011, the Court held a pretrial conference, and the only party who appeared was counsel for the plaintiff. Counsel indicated that he would be filing a default judgment motion because the defendant had failed to file an answer by the May 4, 2011 deadline. The Court asked counsel to give the defendant fourteen days to object to the motion, and to file with the motion an affidavit attesting to the facts that would have entitled the plaintiff to prevail had the case proceeded to trial.

On September 8, 2011, the plaintiff filed its default judgment motion,

---

[1] Although it referenced a cash advance in its complaint, the plaintiff did not include the $123.50 in the amount that it sought to except from discharge. Presumably, the exclusion is due to the amount of the cash advance: Section 523(a)(2)(C)(i)(II) requires that a cash advance aggregate at least $875.00 to establish a presumption of nondischargeability. See 11 U.S.C. § 523(a)(2)(C)(i)(II). Because the amount is significantly less than the required amount of $875.00, the $123.50 cash advance would not qualify for the presumption of nondischargeability under § 523(a)(2)(C)(i)(II). See id.

along with a brief and affidavit in support of the motion.  The motion restated the twelve credit card charges and the dates on which the defendant incurred those charges.  The affidavit, signed by plaintiff's counsel, indicated that the plaintiff did not know what specific items the defendant had purchased with the credit card, (Pl. Aff. ¶ 8-14).  Plaintiff's counsel asserted, however, that some of the stores where the defendant made her purchases sold "luxury-good"-type items.  (Pl. Aff. ¶ 9, 10, 12, 13).  For example, the plaintiff asserted that Wal-Mart "sells a variety of luxury goods," that Ashley Homestore "appears to sell furniture," and that Jack L. Marcus, Inc. "appears to sell a wide variety of electronic equipment and other items."  (Pl. Aff. ¶ 9, 12, 13).  The affidavit stated that the nature of the charges to The Dollar Tree and to Dental Associates were "unknown." (Pl. Aff. ¶ 10, 14).  The affidavit did not reference the charge to Boston Store.

B.    Analysis

The complaint alleged a cause of action under § 523(a)(2)(C)(i)(I).[2] Section 523(a)(2)(C) applies to debts incurred through the use of a credit card. 11 U.S.C. § 523(a)(2)(C).  If a moving party is able to prove that a credit card purchase meets all of the elements under § 523(a)(2)(C)(i)(I), then the moving

---

[2] The complaint did not mention § 523(a)(2)(A), only citing generally to § 523(a)(2).  The brief in support of the default judgment motion cited § 523(a)(2)(A).

party has established a rebuttable presumption[3] of nondischargeability. 11 U.S.C. § 523(a)(2)(C)(i)(I). The Court first will address whether the plaintiff has established the presumption under § 523(a)(2)(C)(i)(I). If so, it will not be necessary for the Court to analyze the credit card purchases against § 523(a)(2)(A) (a cause of action which the plaintiff did not alleged in its complaint in any event). See 11 U.S.C. § 523(a)(2)(C)(i).

1.  Section 523(a)(2)(C)(i)(I)

To establish a presumption of nondischargeability for credit card charges under § 523(a)(2)(C)(i)(I), the moving party must prove that the charge was for: "(1) [a] consumer debt; (2) owed to a single creditor; (3) aggregating more than [$600.00][4]; (4) for luxury goods or services; (5) incurred by an

---

[3] There are various factors that courts will consider in determining whether a debtor has succeeded in rebutting a presumption under § 523(a)(2)(C); a number of these factors look to the debtor's intent at the time of making the purchase. Discover Card v. Anthony, 2010 WL 2079858 *2 (E.D. Wis. May 19, 2010) (citing to In re Alvi, 191 B.R. 724, 733 (Bankr. N.D. Ill. 1996) for the list of factors). Moreover, because having a debt excepted from discharge is such a harsh result for a debtor, "exceptions to discharge are to be liberally construed in favor of debtors." See id. at *1. The defendant in this case neither filed an answer to the complaint nor objected to the default judgment motion, and so has provided no evidence to rebut the presumption if the plaintiff is able to establish one.

[4] The decision laying out the elements of the presumption of nondischargeability for credit cards is In re Leaird, 106 B.R. 177, 179 (Bankr. W.D. Wis. 1989). The version of § 523(a)(2)(C)(i)(I) in effect at the time of the Leaird decision specified a value of $500.00, as opposed to the Code's current version, which specifies a value of $600.00. See Leaird, 106 B.R. at 179.

5

individual debtor; (6) on or within [ninety (90)] days[5] before the order for relief." In re Leaird, 106 B.R. 177, 179 (Bankr. W.D. Wis. 1989)(citations omitted). The Code defines a "consumer debt" as a "debt incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(8).

To establish the presumption, element four of § 523(a)(2)(C)(i)(I) requires that the items that a debtor purchases be "luxury goods or services," but the Code does not explain what items qualify as "luxury goods or services." See 11 U.S.C. § 523(a)(2)(C); James Lockart, J.D., Annotation, *Construction and Application of 11 U.S.C.A. § 523(a)(2)(C)(i)(I) and (ii)(II), Providing Presumptive Nondischargeability of Consumer Debts Incurred Within 90 Days of Order for Relief for Luxury Goods and Services*, 45 A.L.R. Fed. 2d 295, § 1 (2010). The Code *does* explain when an item *will not* qualify as a "luxury good or service:" subsection (C)(ii)(II) states that the "term 'luxury goods or services' does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependant of the debtor." 11 U.S.C. § 523(a)(2)(C)(ii)(II).

The debt that the plaintiff is seeking to discharge consists of twelve different credit card charges, and the earliest credit card transaction took place on October 13, 2010. The defendant filed for bankruptcy on December 28, 2010. Because each charge took place after September 29, 2010, all twelve

---

[5] The version of § 523(a)(2)(C)(i)(I) in effect at the time of the Leaird decision provided a look-back period of forty (40) days, as opposed to the Code's current version, which provides a look-back period of ninety (90) days. See Leaird, 106 B.R. at 179.

6

transactions fell within the ninety-day-look-back period under § 523(a)(2)(C)(i)(I). See 11 U.S.C. § 523(a)(2)(C)(i)(I). Moreover, all of the transactions appear to be "consumer" purchases because the stores where the defendant made the purchases were stores that sell items for "personal, family, or household purpose[s]." See 11 U.S.C. § 101(8); Leaird, 106 B.R. at 179. The debt is owed only to the plaintiff, the aggregate debt is for $7,922.28–significantly higher than the threshold of $600.00 provided in subsection (C)(i)(I), and the defendant was the only person to incur the debt. See Leaird, 106 B.R. at 179.

Although the complaint, brief and affidavit allege facts sufficient to prove a majority of the § 523(a)(2)(C)(i)(I) elements, they fail to allege facts sufficient to prove the fourth element, which requires that the items that the defendant purchased be "luxury goods or services." See id.

A plaintiff is not entitled to default judgment simply because a defendant does not file an answer. In re Bungart, 315 B.R. 735, 737 (Bankr. E.D. Wis. 2004). A plaintiff seeking to establish a presumption of nondischargeability under subsection (C)(i)(I) must provide evidence that proves a *prima facie* case for each element. See id; Leaird, 106 B.R. at 179. Therefore, the plaintiff in this case needed to submit *prima facie* evidence proving that all of the items that the defendant had purchased were "luxury goods or services." See Bungart, 315 B.R. at 737.

Both the complaint and the motion for default simply list the twelve

7

credit card charges, along with an allegation for each charge that the item purchased was not "reasonably necessary for the maintenance and support of [the defendant] nor a dependant of [the defendant]." (Pl. Compl. ¶ 8-19); (Pl. Mtn. ¶ 4). The plaintiff, through an affidavit signed by plaintiff's counsel, even admitted that it did not know the nature of the items the defendant purchased through those charges. (Pl. Aff. ¶ 8-14). The affidavit stated that the charges to Dental Associates and The Dollar Tree were "unknown." For the remaining charges[6], the plaintiff alleged that the stores where the defendant made her purchases were stores that sold "luxury-good"-type items. (Pl. Aff. ¶ 8-14). The plaintiff provided no evidence to show that the items that the defendant purchased were "luxury goods or services."

Because the plaintiff has not presented facts proving that the debt from the twelve credit card charges was a debt incurred to purchase "luxury goods or services," it has not satisfied the fourth element of § 523(a)(2)(C)(i)(I). Leaird, 106 B.R. at 179. Therefore, the plaintiff is not entitled to a presumption of nondischargeability under § 523(a)(2)(C). See 11 U.S.C. § 523(a)(2)(C)(i)(I).

Without the benefit of the presumption, the plaintiff could prevail on the motion for default judgment only if it could allege facts sufficient to prove a *prima facie* case of nondischargeability under § 523(a)(2)(A). Again, the complaint did not allege a §523(a)(2)(A) cause of action. Nonetheless, the Court

---

[6] As stated earlier in the Court's decision, the affidavit did not reference the October 13, 2010 charge to Boston Store.

will consider whether the facts the plaintiff has presented are sufficient to prove such a cause of action.

2.  Section 523(a)(2)(A)

The plaintiff also has failed to prove that the debts are nondischargeable under § 523(a)(2)(A).

To establish the nondischargeability of a debt under § 523(a)(2)(A), a moving party must prove the following elements by a preponderance of the evidence: "(1) the debtor obtained the money through a representation that was false or was made with such reckless regard for the truth as to constitute willful misrepresentation; (2) the debtor had an actual intent to defraud; and (3) the creditor actually and reasonably relied on the false representation." In re Moreno, 414 B.R. 485, 491 (Bankr. W.D. Wis. 2009) (citing In re Luster, 2002 WL 31470382) (7th Cir. November 1, 2002) (citations omitted)).

The complaint asserted that the defendant "necessarily or concomitantly manifested either an actual or implied representation to repay the extension of credit." (Pl. Compl. ¶ 27). The complaint further asserted that the defendant knew at the time of incurring the debt that she would be unable to repay it, and therefore that she made "a material misrepresentation of her intention to repay," and she "had a specific intent to deceive [the plaintiff.]" (Pl. Compl. ¶ 30-32).

The Seventh Circuit has held that to prove fraudulent intent in a § 523(a)(2)(A) cause of action, the moving party must prove that the debtor

9

committed "actual fraud." McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000). The McClellan court defined "actual fraud" as "'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent or cheat another–something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.'" Id. at 893 (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (15th ed., Lawrence P. King ed., 2000)).

The plaintiff in this case did not provide any evidence to prove that the defendant committed an "actual fraud" when she made the credit card purchases. The plaintiff asserted only that the defendant, through the use of the credit card, made an "implied representation to repay," which she knew to be false because she knew that she did not have the ability to repay. (Pl. Compl. ¶ 27, 31). In her decision in In re Bungart, 315 B.R. 735 (Bankr. E.D. Wis. 2004), Judge Kelley rejected the argument that the use of a credit card signifies an "implied representation" to repay. Bungart, 315 B.R. at 737-39.

The Court agrees with the plaintiff's argument from its brief in support of the default judgment motion that a court may look to the surrounding circumstances when determining a debtor's intent, because it is rare for a debtor to admit that he had an intent to defraud his creditors. In fact, this Court previously has held that a court may infer fraudulent intent "from the surrounding circumstances." In re Ward, 425 B.R. 507, 517 (Bankr. E.D. Wis. 2010) (quoting In re Trevisan, 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003)

(citations omitted)). The plaintiff, however, has not provided any evidence–direct, or from the surrounding circumstances– from which the Court can reasonably infer that the defendant had a fraudulent intent. Id.

Accordingly, the plaintiff has failed either to provide direct proof that the defendant committed an "actual fraud" or present evidence that would support an inference that the defendant had fraudulent intent when making the credit card purchases. Accordingly, the plaintiff has failed to prove a *prima facie* case of nondischargeability under § 523(a)(2)(A) as to the credit card debt. See Ward, 425 B.R. at 517; McClellan, 217 F.3d at 893-94.

C. Conclusion

Wherefore, the Court **DENIES** the plaintiff's motion for default judgment as to the credit card charges in the amount of $7,922.28. The Court **ORDERS** the complaint **DISMISSED**, effective immediately.

# # # # #